# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1. Laura Doughty and 2. Amanda Fischer, individually and on behalf of all similarly situated persons,<br><br>       Plaintiffs,<br><br>v.<br><br>1. CentralSquare Technologies, LLC and<br><br>2. City of Norman, Oklahoma, a municipal corporation,<br><br>       Defendants. | Case No. 5:20-cv-00500-G<br><br><br>Hon. Charles B. Goodwin |

**PLAINTIFFS' UNOPPOSED MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT
AND MEMORANDUM OF LAW IN SUPPORT**

# TABLE OF CONTENTS

I.  INTRODUCTION ..............................................................................1

II.  BACKGROUND .............................................................................2

   A.  Brief Overview of the Litigation...............................................2

   B.  Settlement Negotiations ...........................................................3

   C.  Preliminary Settlement Approval and Implementation of the Court-Approved Notice Plan.................................................................4

   D.  Terms of the Settlement ...........................................................5

      1.  The Settlement Class Definition ..................................5

      2.  Direct Benefits to Class Members ...............................6

      3.  Payment of Notice and Administration Costs, Service Awards, and Attorneys' Fees, Costs and Expenses......................................7

III.  ARGUMENT...................................................................................8

   A.  The Settlement is Fair, Reasonable and Adequate, and Warrants Final Approval ...................................................................................8

   B.  The Settlement Was Negotiated at Arm's Length ..........................9

   C.  There Are Numerous Questions of Law and Fact that Place the Outcome of This Case in Doubt ...............................................................9

    **D.**   **The Value of Immediate Recovery Outweighs Mere Possibility of Future Relief** ........................................................................................................ 11

    **E.**   **The Parties Believe That the Settlement Is Fair and Reasonable** ............... 12

    **F.**   **The Proposed Attorneys' Fees Are Reasonable** ........................................... 14

**IV.**   **FINAL CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE** ............................................................................................. 15

    **A.**   **The Rule 23(a) Requirements Are Satisfied** ................................................. 16

    **B.**   **The Requirements of Rule 23(b)(3) Are Satisfied** ........................................ 18

**V.**   **CONCLUSION** .................................................................................................. 19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amchem Prod., Inc. v. Windsor,*

  521 U.S. 591 (1997) ..........................................................................................15, 18

*Bass v. PJCOMN Acquisition Corp.*,

  2011 WL 2149602 (D. Colo. Jun. 1, 2011) .........................................................17

*CGC Holding Co., LLC v. Hutchens,*

  773 F.3d 1076 (10th Cir. 2014) ...........................................................................18

*Cimarron Pipeline Constr., Inc. v. Nat'l Council on Compensation Ins.*,

  1993 WL 355466 (W.D. Okla. June 8, 1993) ......................................................15

*Colo. Cross Disability Coal. v. Abercrombie & Fitch Co.*,

  765 F.3d 1205 (10th Cir. 2014) ...........................................................................17

*CompSource Okla. v. BNY Mellon, N.A.*,

  2012 WL 6864701 (E.D. Okla. Oct. 25, 2012) ...................................................15

*DG ex rel. Stricklin v. Devaughn,*

  594 F.3d 1188 (10th Cir. 2010) ...........................................................................16

*Dolmage v. Combined Ins. Co. of Am.*,

  2017 WL 1754772 (N.D. Ill. May 3, 2017) .........................................................10

*Farley v. Family Dollar Stores, Inc.*,

  2014 WL 5488897 (D. Colo. Oct. 30, 2014).......................................................13

*Gaston v. FabFitFun, Inc.*,

2021 WL 6496734 (C.D. Cal. Dec. 9, 2021) .................................................................. 12

*Hammond v. Bank of N.Y. Mellon Corp.*,

2010 WL 2643307 (S.D.N.Y. June 25, 2010) ................................................................ 10

*Harris v. Chevron U.S.A., Inc.*,

2019 WL 5846917 (W.D. Ok. July 29, 2019) ................................................................ 15

*In re Crocs, Inc. Sec. Litig.*,

306 F.R.D. 672 (D. Colo. 2014) ....................................................................................... 9

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*,

293 F.R.D. 21 (D. Me. 2013) ......................................................................................... 10

*In re Marriott Int'l., Inc., Customer Data Security Breach Litig.*,

2022 WL 1396522 (D. Md. May 3, 2022) ..................................................................... 17

*In re Samsung Top-load Washing Machine Mktg., Sales Prac. and Prod. Liability Litig.*,

Case,

2020 WL 2616711 (W.D. Okla. May 22, 2020) ....................................................... 8, 13

*In re Sonic Corp. Customer Data Sec. Breach Litig.*,

2019 WL 3773737 (N.D. Ohio Aug. 12, 2019) .............................................................. 9

*In re Target Corp. Customer Data Security Breach Litig.*,

2015 WL 7253765 (D. Minn. Nov. 17, 2015) ............................................................... 10

*In re TJX Cos. Retail Sec. Breach Litig.*,

246 F.R.D. 389 (D. Mass. 2007) .................................................................................... 10

*Koenig v. Lime Crime, Inc.*,

2018 WL 11358228 (C.D. Cal. Apr. 2, 2018) ............................................................... 12

*Linnins v. HAECO Ams., Inc.*,

    2018 WL 5312193 (M.D.N.C. Oct. 26, 2018) ............................................................... 10

*Lucas v. Kmart Corp.*,

    234 F.R.D. 688 (D. Colo. 2006) .................................................................................... 9

*Marcus v. Kansas Dep't of Revenue*,

    209 F. Supp. 2d 1179 (D. Kan. 2002) .......................................................................... 13

*Neiberger v. Hawkins*,

    208 F.R.D. 301 (D. Colo. 2002) .................................................................................. 16

*O'Dowd v. Anthem, Inc.*,

    2019 WL 4279123 (D. Colo. Sept. 9, 2019) ................................................................ 12

*Pliego v. Los Arcos Mexican Rest., Inc.*,

    313 F.R.D. 117 (D. Colo. 2016) ....................................................................... 16, 17, 18

*Rosenbaum v. McAllister*,

    64 F.3d 1439 (10th Cir. 1995) .................................................................................... 14

*Rutter & Wilbanks Corp. v. Shell Oil Co.*,

    314 F.3d 1180 (10th Cir. 2002) .............................................................. 8, 9, 11, 13, 17

*Smith v. Triad of Ala.*, LLC,

    2017 WL 1044692 (M.D. Ala. Mar. 17, 2017) ............................................................ 10

*Trevizo v. Adams*,

    455 F.3d 1155 (10th Cir. 2006) .................................................................................. 16

*United Food & Com. Workers Union v. Chesapeake Energy Corp.*,

    281 F.R.D. 641 (W.D. Okla. 2012) ............................................................................. 18

*Vaszlavik v. Storage Tech. Corp.*,

   2000 WL 1268824 (D. Colo. Mar. 9, 2000) ................................................................ 15

*Wilkerson v. Martin Marietta Corp.*,

   171 F.R.D. 273 (D. Colo. 1997) ............................................................... 9, 10, 13

**Rules**

Fed. R. Civ. P. 23(a)(1) ............................................................................................. 16

Federal Rule of Civil Procedure 23(e) ....................................................................... 8

FRCP 68 .......................................................................................................................... 14

Rule 23(a) ....................................................................................................................... 18

Rule 23(a)(2) ............................................................................................................ 16, 17

Rule 23(a)(3) .................................................................................................................. 17

Rule 23(a)(4) .................................................................................................................. 17

Rule 23(b)(3) .................................................................................................................. 18

**Other Authorities**

MANUAL FOR COMPLEX LITIGATION §21.632 (4th ed. 2014) .............................. 15

## I.    INTRODUCTION

Plaintiffs Laura Doughty and Amanda Fischer, individually and on behalf of all similarly situated persons ("Plaintiffs"), respectfully move for final approval of the proposed class action settlement with Defendant CentralSquare Technologies, LLC ("CentralSquare" or "Defendant").[1] Defendant, City of Norman, Oklahoma ("Norman"), is not a party to the Settlement. CentralSquare does not oppose the relief sought by Plaintiffs herein.[2]

On April 20, 2022, the Court preliminarily approved the Settlement as "fair, reasonable, and adequate," preliminarily certified a class for settlement purposes, and directed that notice be disseminated to the Settlement Class. *See* Order dated April 20, 2022 (ECF No. 115). The parties have complied with all of the notice and other requirements in the Court's Preliminary Approval Order. Although the deadline to file claims is not until September 8, 2022, to date, the response from the Settlement Class has been uniformly positive: 812 Claim Forms have been submitted, zero Class Members have exercised their ability to object to the Settlement, and only one Class Member has sought to exclude themselves from the Settlement.

As previously laid out by Plaintiffs in their preliminary approval briefing (ECF No. 109), the Settlement is an excellent result and provides meaningful monetary and injunctive relief for the Class. Plaintiffs submit that the terms of the Settlement are fair, reasonable,

---

[1] Unless otherwise indicated, all capitalized terms have the same meaning as in the Settlement Agreement and Release (the "SA").

[2] CentralSquare does not take a position on Plaintiffs' legal arguments set forth herein.

and adequate, and satisfy all criteria for final approval. Plaintiffs thus respectfully request that the Court approve the Settlement, certify the Settlement Class, and enter the Final Order and Final Judgment submitted herewith, which were also submitted as Exhibit B to Plaintiffs' preliminary approval motion (*See* ECF No. 109-2).[3]

## II.    BACKGROUND

### A.    Brief Overview of the Litigation[4]

In the spring of 2017, news outlets began reporting of instances of payment card data breaches that were linked to utility payment systems for city and local governments. ¶20.[5] CentralSquare creates software products in the go-to payment technology sector, specifically focused on serving public entities. ¶¶15-16.

From 2017 to 2019, municipalities were targeted by cybercriminals in a wave of attacks that impacted Norman and more than thirty other municipalities across the country. ¶26. From 2017 to 2019, due to the criminal cyberattacks targeting these municipalities, members of the putative Class experienced a cyberattack that impacted their payment card information, including names, card numbers, expiration dates, and security codes (collectively, "Payment Data") (the "Incident"). ¶5. Over 300,000 individuals were potentially impacted by the Incident between 2017 and 2019. *Id.*

---

[3] Plaintiffs are contemporaneously filing a separate motion for attorneys' fees, expenses, and service awards herewith.

[4] The facts and procedural history of the litigation were set forth at length in Plaintiffs' preliminary approval briefing (ECF No. 109) and briefing in support of Plaintiffs' request for fees, expenses, and service awards (filed concurrently with this motion).

[5] All citations to "¶" or "¶¶" herein refer to Plaintiffs' First Amended Class Action Complaint filed on January 26, 2022 (ECF No. 101).

### B.    Settlement Negotiations

The Settlement resulted from good faith, arm's-length settlement negotiations supervised by mediator Rodney Max of the Upchurch, Watson, White, & Max Mediation Group in Miami, Florida. (Declaration of William B. Federman ("Fed. Decl.") filed in conjunction with Plaintiffs' motion for preliminary approval, ¶19) (ECF No. 110). Plaintiffs and CentralSquare were unable to agree to terms of settlement at the end of the mediation, but progress was made.

Both Plaintiffs and Defendants engaged in rigorous discovery. (Fed. Decl. ¶¶34-36). Discovery conducted included the deposition of Plaintiff Laura Doughty on November 20, 2020. *Id*.  Charles Almy, Chief Information Officer for CentralSquare was deposed on November 16 and 17, 2020. (Fed. Decl. ¶34). Karen Duncan Roberts, Development Manager for CentralSquare, was deposed on November 17, 2020. *Id*. Defendants produced more than 10,000 pages of documents in response to Plaintiffs' requests for production, which Plaintiffs' counsel reviewed in detail and used to pursue the litigation. *Id*. Plaintiffs' counsel also pursued discovery from more than forty-three (43) third parties including CentralSquare's technology consultants and public relations firm as well as the municipalities that used Click2Gov. Class Counsel retained and utilized multiple expert witnesses in both discovery and to support the two Motions for Class Certification filed in this action. *Id.*

Before, during and after Plaintiffs' and CentralSquare's settlement negotiations and first mediation, Plaintiffs, in conjunction with information reviewed by their experts, sought and obtained both formal and informal discovery from CentralSquare and Norman,

including: the number of individuals whose Payment Data was compromised during the Incident; the types of Payment Data exposed; the mechanics of the Incident including identification of the affected systems; internal communications about how the Incident was uncovered and the remedial actions taken by CentralSquare after the Incident was uncovered; the reaction and remedial measures taken by various municipalities; CentralSquare's financial condition; the support being given to Click2Gov; and the terms of any potentially applicable insurance coverage. (Fed. Decl. ¶35).

Plaintiffs and CentralSquare conducted a second full day in person mediation that went well into the evening with mediator Rodney Max on Oct. 13, 2021. *See* Declaration of William B. Federman submitted contemporaneously herewith with Plaintiffs' Unopposed Motion and Application for Attorneys' Fees, Expenses, and Service Awards to Class Representatives ("Fed. Decl. II"), ¶13. Norman did not participate in this second mediation. *Id.* The second mediation resulted in Plaintiffs and CentralSquare reaching an agreement on most material terms for a settlement that was subsequently agreed upon with additional negotiations over the next several weeks. The SA was executed as of March 28, 2022.

C.    **Preliminary Settlement Approval and Implementation of the Court-Approved Notice Plan**

On April 20, 2022, the Court granted Plaintiffs' preliminary approval motion and scheduled a final approval hearing for October 7, 2022. ECF No. 115. Pursuant to the Preliminary Approval Order, the parties implemented the Court-approved Notice Plan in coordination with the Settlement Administrator, KCC Class Action Services LLC

("KCC"). *See* Declaration of Janeth Antonio, ¶¶6-11, filed herein as **Exhibit 1**. The Settlement Administrator established a Settlement Website, https://cstsettlement.com/, operational as of May 5, 2022, where Class Members could obtain important information about the Settlement. *Id.*, ¶12. Settlement Class Members are able to file claims both electronically and by mail. *Id.*, ¶¶12, 14. The Settlement Administrator also established a toll-free telephone number to allow Class Members to communicate with the Settlement Administrator regarding the Settlement. *Id*., ¶13.

CentralSquare submitted to the Settlement Administrator the name, mailing address, and email address (if available), of each known Settlement Class member. *Id.*, ¶5. The Settlement Administrator used this data, along with other reasonably available sources, to send an email notice to Settlement Class members for whom an email address was identified. *Id.*, ¶¶10-11. The Settlement Administrator sent a mail notice to class members for whom an email address is not identified. *Id*., ¶¶6-10.

The deadline for Settlement Class Members to request exclusion from or object to the Settlement is July 25, 2022. *Id.*, ¶¶15-16. To date, the Settlement Administrator has received zero objections and only one request for exclusion. *Id*. The claims deadline is September 8, 2022 and to date, a total of 812 Claim Forms have been timely submitted by Settlement Class Members. *Id.*, ¶14. *See also*, Fed. Decl. II, ¶8.

D.      **Terms of the Settlement**

1.      **The Settlement Class Definition**

The Court provisionally certified the following Settlement Class[6] for purposes of settlement only:

> All individuals in the United States whose Payment Card was used to pay utility bills and/or other payments through the CentralSquare Click2Gov payment portal between January 1, 2017 and December 31, 2019. Excluded from the Settlement Class are the judge(s) presiding over this matter, any members of the judicial staff, the officers and directors of CentralSquare, and persons who timely and validly request exclusion from the Settlement Class.

(ECF No. 115).

## 2.    Direct Benefits to Class Members

Under the Settlement, CentralSquare will pay $1.9 million initially, and up to a maximum of $2.9 million, into a settlement fund. (SA, ¶34). The settlement fund will be used to: 1) pay court-approved attorneys' fees, expenses, and plaintiff service awards; 2) pay costs of administration and notice; and 3) make payments to Settlement Class Members who submit approved documented unreimbursed loss or attested time claims, as defined in the Settlement Agreement. (SA, ¶45). Eligible Settlement Class Members may make both documented unreimbursed loss claims documented loss claims and attested time claims. *Id.*

For documented unreimbursed loss claims, Settlement Class Members are eligible to receive reimbursement of all losses and out-of-pocket expenses incurred during the Settlement Class Period (January 1, 2017 to December 31, 2019) if they: a) used their Payment Card during the Settlement Class Period and experienced an unreimbursed monetary loss more likely than not caused by the Incident; and (b) provide documentation

---

[6] CentralSquare does not oppose certification for settlement purposes only.

of their unreimbursed monetary losses including fraudulent charges, bank fees, replacement card fees, late fees, credit freeze fees as well as any other fees such as parking or transportation incurred as a result of the Incident, and the efforts made to avoid or seek reimbursement for the loss. (SA, ¶¶ 45(a) and (b)). Settlement Class Members with such documented unreimbursed losses are also eligible to receive up to $60 at a rate of $20 per hour for time attested to in addressing any fraudulent transactions or monitoring their accounts as a result of the Incident. (SA, ¶¶ 45(c)).

In addition to monetary consideration, CentralSquare has committed to numerous measures to further enhance its data security practices including, but not limited to: (a) requiring that all Click2Gov payment programs comply with PCI DSS Standards; (b) appointment of a qualified Chief Information Security Officer responsible for coordinating CentralSquare's protection of citizen users' personal information; (c) the implementation of an anonymous hotline for data security; (d) the hiring of a third party vendor to annually audit CentralSquare's data security systems; and (e) the encryption of all payment card data at such time data is input. (SA, ¶50). CentralSquare also represents, as part of the SA, that it has completed significant remediation of its data security practices. *Id.*

### 3. Payment of Notice and Administration Costs, Service Awards, and Attorneys' Fees, Costs and Expenses

The Settlement Fund will also be used to pay the reasonable costs of notice, settlement administration, service awards to the class representatives, attorneys' fees, and reimbursement of litigation expenses/costs. (SA, ¶51). Plaintiffs are concurrently submitting a memorandum of law in support of their Motion for an award of attorneys'

fees, costs, expenses and service awards.

## III.    ARGUMENT

### A.    The Settlement is Fair, Reasonable and Adequate, and Warrants Final Approval

Under Federal Rule of Civil Procedure 23(e), a court should approve the settlement of a class action if it is "fair, reasonable and adequate," after considering several criteria: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including the timing of payment; and (iv) any agreement made in connection with the proposal.[7]" Fed. R. Civ. P. 23(e). While the decision of whether to approve a proposed settlement of class action "is committed to the sound discretion of the trial court," the Tenth Circuit has identified four factors that bear on whether a class settlement is fair, reasonable, and adequate: (1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable. *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002); *see also In re Samsung Top-load Washing Machine Mktg., Sales Prac. and Prod. Liability Litig.*, Case No. 17-ml-2792-D, 2020 WL 2616711, at *12 (W.D. Okla. May 22, 2020), *aff'd,* 997 F.3d 1077 (10th Cir. 2021).

---

[7] The Parties are unaware of any side agreements in connection with the Settlement.

**B.      The Settlement Was Negotiated at Arm's Length**

Where "the settlement resulted from arm's length negotiations between experienced counsel after significant discovery had occurred, the Court may presume the settlement to be fair, adequate, and reasonable." *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006).[8]

The Settlement was reached after over a year of hard-fought negotiations between the parties, with experienced counsel for all parties, who "'vigorously advocated their [client's] respective positions'" for the duration of the litigation. *See Lucas*, 234 F.R.D. at 693 (quoting *Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 284 (D. Colo. 1997)).

The Settlement was reached with the further assistance and guidance of an experienced neutral. Specifically, the parties participated in two full-day mediations with Mr. Rodney Max. Fed. Decl. ¶19. The record in the case thus makes clear that the first *Rutter* factor is satisfied. *See In re Crocs, Inc. Sec. Litig.*, 306 F.R.D. 672, 691 (D. Colo. 2014) (approving settlement where it was the result of arm's length negotiations and reached with the assistance of experienced mediators).

**C.      There Are Numerous Questions of Law and Fact that Place the Outcome of This Case in Doubt**

The second *Rutter* factor asks whether "serious questions of law and fact . . . plac[ed] the ultimate outcome of the litigation in doubt." *Rutter*, 314 F.3d at 1188.

Data breach cases, such as this one, are especially risky, expensive, and complex. *See In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-md-2807, 2019 WL

---

[8] Unless otherwise noted, internal citations are omitted and emphasis is added.

3773737, at *7 (N.D. Ohio Aug. 12, 2019) ("Data breach litigation is complex and risky. This unsettled area of law often presents novel questions for courts. And of course, juries are always unpredictable."). Because the "legal issues involved in [data breach litigation] are cutting-edge and unsettled . . . many resources would necessarily be spent litigating substantive law as well as other issues." *In re Target Corp. Customer Data Security Breach Litig.*, No. 14-2522 (PAM/JJK), 2015 WL 7253765, at *2 (D. Minn. Nov. 17, 2015), *aff'd*, 892 F.3d 968 (8th Cir. 2018). Beyond the merits, class certification is challenging in any case. Notably, "[a]s of May 2018, nationwide only one data breach consumer class had been certified." *Linnins v. HAECO Ams., Inc.*, No. 1:16CV486, 2018 WL 5312193, at *2 (M.D.N.C. Oct. 26, 2018) (referring to *Smith v. Triad of Ala.*, LLC, No. 1:14-CV-324-WKW, 2017 WL 1044692, at *16 (M.D. Ala. Mar. 17, 2017)).[9] Although Plaintiffs are confident that they could overcome CentralSquare's defenses, they concede that success is not guaranteed. *See*, *e.g.*, *Wilkerson*, 171 F.R.D. at 285 ("the one constant about litigation . . . is that the ultimate jury result is uncertain, unknown and unpredictable"). Plaintiffs recognize that there are also significant risks associated with obtaining class certification and prevailing on a motion for summary judgment. *Hammond v. Bank of N.Y. Mellon Corp.*, No. 08-cv-6060 (RMB) (RLE), 2010 WL 2643307, at *14 (S.D.N.Y. June 25, 2010) (granting summary judgment for defendant in data breach case).

---

[9] Indeed, some courts that have considered class certification motions in data breach cases have denied them. *See, e.g., Dolmage v. Combined Ins. Co. of Am.*, 2017 WL 1754772, at *10 (N.D. Ill. May 3, 2017) (class certification denied); *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21, 33 (D. Me. 2013) (same); *In re TJX Cos. Retail Sec. Breach Litig.*, 246 F.R.D. 389, 397-98 (D. Mass. 2007) (same).

Given the risks of continued litigation in this matter, the Settlement delivers an immediate, real, and substantial result that fairly, reasonably, and adequately addresses the situation confronting Class Members while eliminating lengthy, uncertain, and expensive litigation. This factor supports final approval.

### D. The Value of Immediate Recovery Outweighs Mere Possibility of Future Relief

The third *Rutter* factor asks "whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation." *Rutter*, 314 F.3d at 1188.

The Settlement will provide Class Members with significant and timely benefits which compare favorably to what Class Members could recover were they to secure a favorable judgment at trial. The Settlement creates a settlement fund of $1.9 million initially, with up to $2.9 million, from which payments will be made to claimants who submit approved claims. (Fed. Decl. ¶8).

With a class size of approximately 300,000, a maximum settlement fund of $2.9 million initially results in an average payout of between $193 and $96, assuming that the overall claims rate is between 5% and 10%. If the claims are lower and the net settlement fund does not exceed $1.9 million, then the average payouts would be between $127 and $63.[10]

Here, the $1.9 million initial settlement fund could provide a per capita recovery

---

[10] The claims rate is currently .43%, though Class Members still have nearly another two months to submit claims. Fed. Decl. II, ¶8.

of approximately $5.50 for each of the roughly 300,000 class members.  In addition to the examples provided in Plaintiffs' preliminary approval papers, *see also*, *e.g.*, *Gaston v. FabFitFun, Inc.*, Case No. 2:20-cv-09534-RGK-E, 2021 WL 6496734 (C.D. Cal. Dec. 9, 2021) (approving data breach settlement with per capita recovery of $1.42); *Koenig v. Lime Crime, Inc.*, Case No. CV 16-503 PSG (JEMx), 2018 WL 11358228 (C.D. Cal. Apr. 2, 2018) (approving data breach settlement with per capita recovery of $1.05).

Additionally, the injunctive relief regarding CentralSquare's data security practices provides further substantial non-monetary benefits to Class Members. *See O'Dowd v. Anthem, Inc.*, No. 14-CV-02787-KLM-NYW, 2019 WL 4279123, at *18 (D. Colo. Sept. 9, 2019) (injunctive relief provides "substantial non-monetary benefits" to the class). The forward-looking relief provided by the Settlement is particularly valuable because Defendant commits to significant security measures and protection of personal information.[11] This benefit is available to all Class Members, regardless of whether they submit a monetary claim.

Were this litigation to continue, there is no guarantee that Class Members would ever see any relief for their claims, whether monetary or non-monetary. The immediate and substantial benefits provided by the Settlement weigh in favor of final approval.

**E.     The Parties Believe That the Settlement Is Fair and Reasonable**

---

[11] The business practice changes implemented by CentralSquare are valued at hundreds of thousands of dollars. For example, in a similar data breach, the defendant's expert valued that the cost of hiring a Chief Information Security Officer – which CentralSquare has agreed to maintain here (SA, ¶50) – would cost approximately $201,563-$266,573 per year. *See* Affidavit of Dr. Bruce V. Hartley, attached hereto as **Exhibit 2**.

The final *Rutter* factor considers the parties' view of the settlement. *Rutter*, 314 F.3d at 1188. In determining whether a proposed Settlement is fair, reasonable and adequate, the judgment of plaintiff's counsel is entitled to significant weight by the Court. *See Samsung*, 2020 WL 2616711, at *18; *see also Farley v. Family Dollar Stores, Inc.*, No. 12-cv-00325-RM-MJW, 2014 WL 5488897, at *3 (D. Colo. Oct. 30, 2014).  Where, as here, "a settlement is reached by experienced counsel after negotiations in an adversarial setting, there is an initial presumption that the settlement is fair and reasonable." *Marcus v. Kansas Dep't of Revenue*, 209 F. Supp. 2d 1179, 1182 (D. Kan. 2002).

Class Counsel is William B. Federman, an attorney who has substantial experience serving as counsel in numerous complex class actions, including in other data breach cases. Fed. Decl. II, ¶5. Based on Class Counsel's understanding of the facts and the applicable law, and after fully evaluating the strengths and weaknesses of the case, Class Counsel endorses the Settlement as fair, reasonable, and adequate to the Settlement Class (*Id.*). Given his experience and success in prosecuting class actions, his judgment is entitled to substantial weight; *see also Wilkerson*, 171 F.R.D. at 288-89.

Finally, the positive reaction of the Settlement Class to the Settlement further favors approval by the Court. As of this filing, a total of 812 Claim Forms have been submitted by Class Members. Antonio Decl., ¶14. To date, there have been zero objections and only one Class Member has requested exclusion. *Id.*, ¶¶15-16. This factor weighs in favor of final approval. *Rutter*, 314 F.3d at 1188 (noting that the district court did not abuse its discretion in approving a class settlement from which an "extremely small percentage of class members opted out.").

13

## F.      The Proposed Attorneys' Fees Are Reasonable

Plaintiffs' application for attorneys' fees and expenses (submitted concurrently) explains in detail why the amount requested for fees is reasonable and modest in light of the work completed by Class Counsel, and the risk of not only no recovery but also having to pay for Defendant's attorneys' fees. Indeed, the Court entered an order regarding Defendant's offer of judgment made pursuant to FRCP 68 and found that Defendant's offer was properly made, thereby denying Plaintiff Doughty's motion to strike the offer of judgment. *See* ECF No. 79. This Order exposed Plaintiff Doughty and her counsel to the risk of continuing litigation that grew exponentially to potentially over $1 million. Pursuant to FRCP 68, even if Plaintiff Doughty was successful to obtain judgment, if it was for less than Defendant's original offer of judgment, she would have had to pay the costs incurred after the offer of judgment was made. Thus, Plaintiff Doughty and Class Counsel were exposed to potentially a multimillion award if the final trial results did not exceed the offer of judgment and the result achieved.

CentralSquare has agreed not to oppose Plaintiffs' request of $900,000.00 in fees and expenses. This figure was negotiated after the substantive terms of the Settlement were reached and following a mediator's proposal from an experienced data breach mediator. Fed. Decl., ¶¶11, 19. *See* also, Fed. Decl. II, ¶7. Plaintiffs request approximately 28% percent of $2,900,000 for fees, which is the cap of CentralSquare's potential contribution to the Settlement Fund. Examining the percentage of the common fund is an acceptable method of evaluating the reasonableness of requested attorney's fees. *Rosenbaum v. McAllister*, 64 F.3d 1439, 1445 (10th Cir. 1995). A fee award of approximately 28% of the

settlement value is well within the range of acceptable fee awards in common fund cases. *See*, *e.g.*, *Chieftain Royalty Co. v. QEP Energy Co.*, No. CIV-11-212-R, Dkt. No. 182 at *6 (W.D. Okla. May 31, 2013) (awarding a fee of $46.5 million, which represented approximately 39% of the cash portion of a $155 million settlement); *CompSource Okla. v. BNY Mellon, N.A.*, No. CIV 08–469–KEW, 2012 WL 6864701 (E.D. Okla. Oct. 25, 2012) ("25% is on the low end of the range of acceptable fee awards in common fund cases, which ranges between 22% and 37%, and more in some cases"); *Vaszlavik v. Storage Tech. Corp.*, No. 95-B-2525, 2000 WL 1268824, at *4 (D. Colo. Mar. 9, 2000) ("A 30% common fund fee award is in the middle of the ordinary 20%-50% range and is presumptively reasonable."); *Cimarron Pipeline Constr., Inc. v. Nat'l Council on Compensation Ins.*, Nos. CIV 89-822-T & CIV-1186-T, 1993 WL 355466, at *2 (W.D. Okla. June 8, 1993) ("Fees in the range of 30-40% of any amount recovered are common in complex and other cases taken on a contingent fee basis.").

## IV.   FINAL CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE

When a settlement is reached before certification, a court must determine whether to certify the settlement class. *See, e.g.*, MANUAL FOR COMPLEX LITIGATION §21.632 (4th ed. 2014); *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 613-14 (1997). Certification of a settlement class is proper when the requirements of Rule 23(a) and at least one subsection of Rule 23(b) are satisfied. *See, e.g.*, *Harris v. Chevron U.S.A., Inc.*, Case No. CIV-15-0094-PRW, 2019 WL 5846917, at *2 (W.D. Ok. July 29, 2019). The Court previously provisionally certified the Settlement Class based on these criteria, and final settlement

class certification is warranted for the same reasons.[12]

### A.    The Rule 23(a) Requirements Are Satisfied

*Numerosity:* Rule 23(a)(1) requires that a proposed settlement class be "so numerous that joinder of all class members is impracticable." Fed. R. Civ. P. 23(a)(1). Some courts have held that numerosity may be presumed at a certain number; the Tenth Circuit, however, "has never adopted such a presumption." *Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006). In determining whether a proposed class meets the numerosity requirement, "the exact number of potential members need not be shown," and a court "may make 'common sense assumptions' to support a finding that joinder would be impracticable." *Neiberger v. Hawkins*, 208 F.R.D. 301, 313 (D. Colo. 2002). Courts in the Tenth Circuit have determined that numerosity has been satisfied where classes consisted of 50 or 100 members. *See Pliego v. Los Arcos Mexican Rest., Inc.*, 313 F.R.D. 117, 126 (D. Colo. 2016) (collecting cases). Here, the proposed class consists of approximately 300,000 individuals. As such, the numerosity requirement is easily met.

*Commonality:* Rule 23(a)(2) requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). A finding of commonality requires only a single common question of law or fact. *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1195 (10th Cir. 2010).

In this case, Class Members share multiple issues of law and fact. Data breach cases

---

[12] Additionally, counsel for Norman recognized the likelihood of certification in this case, and Plaintiffs and Norman currently have a joint motion to certify the Norman Subclass pending (ECF No. 53).

easily satisfy the commonality requirement. *See, e.g.*, *In re Marriott Int'l., Inc., Customer Data Security Breach Litig.*, No. 19-md-2879, 2022 WL 1396522, at *9-10 (D. Md. May 3, 2022). Given the near complete overlap in factual and legal claims across the Class, the commonality requirement is easily met here.

*Typicality*: Rule 23(a)(3) requires that the claims asserted by a plaintiff on behalf of a class be typical of the claims of other class members. Fed. R. Civ. P. 23(a)(2). "A plaintiff's claim is typical of class claims if it challenges the same conduct that would be challenged by the class." *Pliego*, 313 F.R.D. at 126 (quoting *Bass v. PJCOMN Acquisition Corp.*, No. 09-cv-01614-REB-MEH, 2011 WL 2149602, at *3 (D. Colo. Jun. 1, 2011)). "[D]iffering fact situations of class members do not defeat typicality under Rule 23(a)(3) so long as the claims of the class representative and class members are based on the same legal or remedial theory." *Colo. Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1216 (10th Cir. 2014). Here, the Plaintiffs' and Class Members' claims arise from the same Incident and same alleged course of conduct by Defendant. The typicality requirement is satisfied.

*Adequacy of Representation*: Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Tenth Circuit has identified two questions relevant to the adequacy of representation inquiry: (i) whether the named plaintiffs and their counsel have any conflicts with other class members; and (ii) whether the named plaintiffs and their counsel will vigorously prosecute the action on behalf of the class. *See Rutter*, 765 F.3d at 1187-88. Plaintiffs' interests in this litigation are aligned with, and not antagonistic to, those of the Settlement

17

Class as they all seek to recover for the harm they incurred as a result of the Incident. Similarly, Class Counsel is competent and experienced counsel who has invested considerable time and resources into the prosecution of this action. Accordingly, the adequacy of representation requirement of Rule 23(a) is satisfied.

### B. The Requirements of Rule 23(b)(3) Are Satisfied

*Predominance:* Rule 23(b)(3) requires that questions of law or fact common to class members predominate over any questions affecting only individual members. *Pliego*, 313 F.R.D. at 126 (citing Fed. R. Civ. P. 23(b)(3)). The predominance test is easily met in cases alleging consumer violations. *United Food & Com. Workers Union v. Chesapeake Energy Corp.*, 281 F.R.D. 641, 655-56 (W.D. Okla. 2012) (quoting *Amchem*, 521 U.S. at 625). Predominance is satisfied here because questions common to all Class Members substantially outweigh any possible issues that are individual to the Class Members.

*Superiority*: The Rule 23(b)(3) also requires that a class resolution be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In this regard, the superiority requirement asks the court to weigh the fairness and efficiency of a class action against alternative methods of adjudication. *See CGC Holding Co., LLC v. Hutchens*, 773 F.3d 1076, 1096 (10th Cir. 2014).

Common questions comprise a substantial aspect of the case and can be resolved for all Class Members in a single adjudication — obviating the need for multiple trials in multiple venues. Further, for most Class Members, individual damages are likely to be too small to pursue individually, making the class action the superior method of adjudication. *Pliego*, 313 F.R.D. at 127 (a class action is superior where the small claims of parties with

limited resources are otherwise unlikely to be pursued).

## V.    CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that this Court grant

final approval of the Settlement, certify the Settlement Class, and enter the Order and Final

Judgment submitted herewith.

Dated: July 11, 2022                              Respectfully submitted,

                                                  *s/William B. Federman*
                                                  William B. Federman, OBA #2853
                                                  Molly E. Brantley, OBA #33126
                                                  **Federman & Sherwood**
                                                  10205 N. Pennsylvania Ave.
                                                  Oklahoma City, OK 73120
                                                  T: (405) 235-1560
                                                  F: (405) 239-2112
                                                  wbf@federmanlaw.com
                                                  meb@federmanlaw.com

                                                  *Counsel for Plaintiffs and the Putative*
                                                  *Classes*

### CERTIFICATE OF SERVICE

I hereby certify that on July 11, 2022, a copy of the foregoing pleading was filed
electronically with the Clerk of Court to be served by operation of the court's electronic
filing system to all counsel of record.

                                                  */s/ William B. Federman*

19