## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1. LAURA DOUGHTY and 2. AMANDA FISCHER, individually and on behalf of all similarly situated persons, | Case No. 5:20-cv-00500-G |
| Plaintiffs, | |
| v. | Hon. Charles B. Goodwin |
| 1. CENTRALSQUARE TECHNOLOGIES, LLC and | |
| 2. CITY OF NORMAN, OKLAHOMA, a municipal corporation, | |
| Defendants. | |

## PLAINTIFFS' UNOPPOSED MOTION AND APPLICATION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS TO CLASS REPRESENTATIVES AND MEMORANDUM OF LAW IN SUPPORT

## TABLE OF CONTENTS

I.   PRELIMINARY STATEMENT ................................................................... 1

II.  BACKGROUND ....................................................................................... 2

   i.      Factual and procedural background and overview of the litigation  2

   ii.     Negotiation of the proposed Settlement Agreement ........................... 5

   iii.    Pertinent terms of the Settlement ......................................................... 5

      1.    The Settlement Class Definition ................................................. 5

      2.    Direct Monetary Relief to Settlement Class Members ............. 6

      3.    Administration Costs, Service Awards, Attorneys' Fees,
            and Expenses of Litigation ......................................................... 7

   iv.     The Court granted Preliminary Approval and the Parties
           implemented the Notice program ......................................................... 7

III. ARGUMENT ............................................................................................. 8

   i.      The percentage-of-the-fund approach is permitted by Oklahoma
           law and preferred by the Tenth Circuit. ............................................. 8

   ii.     The requested fee is within the customary percentage range and
           reasonable under Oklahoma's statutory factors. ............................. 10

i

1.      **The Amount Involved and the Results Obtained – ............... 11**

**§ 2023(G)(4)(e)(8).** .................................................................. **11**

2.      **Time and Labor Required – ...................................................... 12**

**§ 2023(G)(4)(e)(1).** .................................................................. **12**

3.      **Novelty and Difficulty of the Questions Presented –............ 14**

**§ 2023(G)(4)(e)(2).** .................................................................. **14**

4.      **The Skill Required to Litigate the Case and the Experience,**

        **Reputation and Ability of Those Who Did – ......................... 14**

**§ 2023(G)(4)(e)(3) & (9).** ........................................................ **14**

5.      **Limitations on Counsel's Time and Opportunity – ............. 15**

**§ 2023(G)(4)(e)(4) & (7).** ........................................................ **15**

6.      **Customary Fee and Awards in Similar Cases – .................. 16**

**§ 2023(G)(4)(e)(5) & (12).** ...................................................... **16**

7.      **Whether the Fee is Fixed or Contingent, and Risk of**

        **Recovery – ...............................................................................17**

**§ 2023(G)(4)(e)(6) & (13).** ...................................................... **17**

8.      **The 'Undesirability' of the Case – .......................................... 18**

**§ 2023(G)(4)(e)(10).** ................................................................ **18**

9.      **Counsel's Relationship with the Client – ............................... 19**

**§ 2023(G)(4)(e)(11).** ................................................................ **19**

iii.     Class Counsel's fee request is reasonable under a lodestar crosscheck. ... 19

        1.     Class Counsel's Report of Hours Expended and Lodestar Incurred. ................................................................................. 20

        2.     Class Counsel's Recorded Hours and Rates are Reasonable. ................................................................................................. 21

iv.     Class Counsel's expenses should be reimbursed from the Settlement Fund as part of the $900,000.00 sought because they are reasonable, were necessary, and are a small fraction of the fund amount. ........................... 23

v.     The requested service awards for the Class Representatives are reasonable. ...................................................................................... 24

IV. CONCLUSION ........................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Merit Energy Co.*,

  2009 WL 3378526 (D. Colo. Oct. 20, 2009) ............................................................9

*Blum v. Stenson*,

  465 U.S. 886 (1984) ..............................................................................................22

*Cecil v. BP Am. Prod. Co.*,

  2018 WL 8367957 (E.D. Okla. Nov. 19, 2018) ......................................................23

*Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*,

  888 F.3d 455. (10th Cir. 2017) ......................................................................8, 20, 24

*Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*,

  2022 WL 566790 (W.D. Okla. Feb. 24, 2022) ..........................................................8

*Chieftain Royalty Co. v. Marathon Oil Co.*,

  2019 WL 7758915 (E.D. Okla. Mar. 8, 2019) ........................................................14

*Chieftain Royalty Co. v. XTO Energy Inc.*,

  2018 WL 2296588 (E.D. Okla. Mar. 27, 2018) ......................................................10

*Cimarron Pipeline Construction, Inc. v. National Council on Compensation
  Insurance*,

  1993 WL 355466 (W.D. Okla. June 8, 1993) ....................................................11, 16

*CompSource Okla. v. BNY Mellon, N.A.*,

  2012 WL 6864701 (E.D. Okla. Oct. 25, 2012) ......................................................11

*Craft v. County of San Bernardino*,

    624 F. Supp. 2d 1113 (C.D. Cal. 1995) ....................................................20

*Dolmage v. Combined Ins. Co. of Am.*,

    2017 WL 1754772 (N.D. Ill. May 3, 2017)..............................................14

*Fitzgerald Farms, L.L.C. v. Chesapeake Operating, L.L.C.*,

    2015 WL 5794008 (Okla. Dist. Ct. Beaver Cty. July 2, 2015) ................11

*Friedman v. Quest Energy Partners LP*, No. CIV-,

    2010 WL 4925133 (W.D. Okla. Nov. 29, 2010) .....................................16

*Gottlieb v. Barry*,

    43 F.3d 474 (10th Cir. 1994) .....................................................................9

*Hensley* v. *Eckerhart*,

    461 U.S. 424 (1983)..................................................................................20

*Hess v. Volkswagen of Am.*,

    398 P.3d 27 (Okla. Ct. Civ. App. 2017) ..................................................12

*In re Anthem, Inc. Data Breach Litig.*,

    327 F.R.D. 299 (N.D. Cal. 2018)..............................................................18

*In re Anthem, Inc. Data Breach Litig.*,

    2018 WL 3960068 (N.D. Cal. Aug. 17, 2018) .........................................23

*In re Equifax Inc. Customer Data Security Breach Litig.*,

    999 F.3d 1247 (11th Cir. 2021) ...............................................................18

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*,

    293 F.R.D. 21 (D. Me. 2013)....................................................................14

v

*In re Nasdaq Mkt.-Makers Antitrust Litig.*,

    187 F.R.D. 465 (S.D.N.Y. 1998) .............................................................................21

*In re Sandridge Energy, Inc.*,

    2015 WL 11921422 (W.D. Okla. Dec. 22, 2015).......................................................22

*In re Sonic Corp. Customer Data Sec. Breach Litig.*,

    2019 WL 3773737 .............................................................................................14

*In re TJX Cos. Retail Sec. Breach Litig.*,

    246 F.R.D. 389 (D. Mass. 2007)............................................................................14

*In re Universal Serv. Fund Tel. Billing Pracs. Litig.*,

    2011 WL 1808038 (D. Kan. May 12, 2011)............................................................24

*Key v. Butch's Rat Hole & Anchor Serv., Inc.*,

    2022 WL 457915 (D.N.M. Feb. 15, 2022) .............................................................24

*Kokins v. Teleflex, Inc.*,

    621 F.3d 1290 (10th Cir. 2010) ...............................................................................8

*Lucken Family Ltd. Partnership, LLP v. Ultra Res., Inc.*,

    2010 WL 5387559 (D. Colo. Dec. 22, 2010) .................................................9, 11, 25

*Maley v. Del Global Techs. Corp.*,

    186 F. Supp. 2d 358 (S.D.N.Y. 2002) ....................................................................21

*Malloy v. Monahan*,

    73 F.3d 1012 (10th Cir. 1996) ...............................................................................22

*Mares v. Credit Bureau of Raton*,

    801 F.2d 1197 (10th Cir.1986) ...............................................................................20

*Missouri v. Jenkins*,

    491 U.S. 274 (1989) ........................................................................................ 22

*Nakkhumpun v. Taylor*,

    2016 WL 11724397 (D. Colo. June 13, 2016) ........................................... 16

*Nieberding v. Barrette Outdoor Living, Inc.*,

    129 F. Supp. 3d 1236 (D. Kan. 2015) ........................................................ 24

*Peterson v. Mortg. Sources, Corp.*,

    2011 WL 3793963 (D. Kan, Aug. 25, 2011) ............................................. 19

*Robert L. Wheeler, Inc. v. Scott*,

    777 P.2d 394 (Okla. 1989) .......................................................................... 14

*Stalcup v. Schlage Lock Co.*,

    505 F. Supp. 2d 704 (D. Colo. 2007) ......................................................... 19

*Stanaford v. Genovese*,

    2015 WL 4930209 (S.D. Fla. Aug. 17, 2015) ........................................... 16

*Strack v. Cont'l Res., Inc.*,

    507 P.3d 609 (Okla. 2021) ..................................................................Passim

*Tibbetts v. Sight 'n Sound Appliance Ctrs., Inc.*,

    77 P.3d 1042 (Okla. 2003) ........................................................................... 11

*Vaszlavik v. Storage Tech. Corp.*,

    2000 WL 1268824 (D. Colo. Mar. 9, 2000) ......................................... 11, 16

*Vizcaino v. Microsoft Corp.*,

    290 F.3d 1043 ............................................................................................... 21

**Rules**

FRCP 68 ........................................................................................................17

12 O.S. §2023 ...................................................................................Passim

**Other Authorities**

Incentive Awards to Class Action Plaintiffs: An Empirical Study,

    53 UCLA L. Rev. 1303 (2006) .................................................................24

## I.    PRELIMINARY STATEMENT

Plaintiffs Laura Doughty and Amanda Fischer ("Plaintiffs" or "Class Representatives") respectfully submit this application for: 1) approval of an award of attorneys' fees and reimbursement of expenses to Class Counsel in the amount of $900,000.00; and 2) approval of service awards of $2,500.00 to Plaintiff Laura Doughty and $1,000.00 to Plaintiff Amanda Fischer (totaling $3,500.00). Defendant, CentralSquare Technologies, LLC ("CentralSquare")[1] does not oppose the relief sought by Plaintiffs herein.[2] Plaintiffs submit a proposed order granting their request contemporaneously with their Motion for Final Approval, and which was filed as Exhibit B to Plaintiffs' preliminary approval motion (ECF No. 109-2). In support of the motion and application, Plaintiffs state as follows:

Plaintiff Doughty initiated her case against CentralSquare on April 20, 2020 in the District Court of Cleveland County, Oklahoma.[3] The case was removed to this Court, and Plaintiff Fischer was added as a named plaintiff in the First Amended Class Action Complaint (ECF No. 101), essentially merging an action pending against CentralSquare pending in the Southern District of Florida[4] after the Parties reached a Settlement in principle.

Beginning in December 2020, the Parties began extended settlement negotiations,

---

[1] Plaintiffs and CentralSquare are referred to collectively as the "Parties" herein.

[2] CentralSquare takes no position on Plaintiffs' legal arguments set forth herein.

[3] Defendant, City of Norman, Oklahoma ("Norman") is not a party to the Settlement.

[4] *See Fischer, et al. v. CentralSquare Technologies, LLC*, Case No. 21-cv-60856-RAR, S.D. Fla. The *Fischer* action survived CentralSquare's motion to dismiss (*see* Order entered September 16, 2021 (ECF No. 28)).

which resulted in the completion and execution of a proposed Class Action Settlement Agreement and Release (the "SA") dated March 28, 2022, filed as Exhibit 1 to the Declaration of William B. Federman ("Fed. Decl.", ECF No. 110) filed in conjunction with the motion for preliminary approval (ECF No. 110-1).

On March 28, 2022, Plaintiffs moved for preliminary approval of the class action settlement that was granted by the Court on April 20, 2022 (ECF No. 115).

Pursuant to the SA, Defendant agreed to establish a Settlement Fund not to exceed $2,900,000.00 and to make significant changes to its business practices. The Settlement Fund will be used to pay valid claims submitted by Class Members, costs of administration and notice, and attorneys' fees, expense reimbursements, and service award payments to the Class Representatives.

The relief requested herein should be considered by the Court at the scheduled Final Approval Hearing on October 7, 2022, in conjunction with Plaintiffs' Motion for Final Approval of the Settlement.

## II.    BACKGROUND

### i.    Factual and procedural background and overview of the litigation

In the spring of 2017, news outlets began reporting of instances of payment card data breaches that were linked to utility payment systems for city and local governments. ¶20.[5] CentralSquare creates software products in the go-to payment technology sector, specifically focused on serving public entities. ¶¶15-16. From 2017 to 2019, municipalities

---

[5] All citations to "¶" or "¶¶" herein refer to Plaintiffs' First Amended Class Action Complaint filed on January 26, 2022 (ECF No. 101) (the "Complaint").

were targeted by cybercriminals in a wave of attacks that impacted Norman and more than thirty other municipalities across the country. ¶26. From 2017 to 2019, due to the cyberattacks targeting these municipalities, members of the putative Class experienced a cyberattack that impacted their payment card information, including names, card numbers, expiration dates, and security codes (collectively, "Payment Data") (the "Incident"). ¶5. Over 300,000 individuals were potentially impacted by the Incident between 2017 and 2019. *Id.*

Plaintiff Doughty filed suit against CentralSquare on April 20, 2020 after learning her Payment Data had been compromised in the Incident. Plaintiff Fischer filed suit against CentralSquare on April 21, 2021 in the Southern District of Florida regarding an earlier breach of the Click2Gov software.

Plaintiffs brought claims against CentralSquare for negligence, breach of implied contract, and declaratory relief. The Parties litigated extensively prior to reaching a settlement and both engaged in rigorous discovery and motion practice. (Fed. Decl. ¶¶34-36.)[6] Discovery conducted included the deposition of Plaintiff Laura Doughty on November 20, 2020. *Id.* Charles Almy, Chief Information Officer for CentralSquare was deposed on November 16 and 17, 2020. (Fed. Decl. ¶34). Karen Duncan Roberts, Development Manager for CentralSquare, was deposed on November 17, 2020. *Id.* Defendants produced more than 10,000 pages of documents in response to Plaintiffs'

---

[6] *See, e.g.*, briefing related to CentralSquare's offer of judgment (ECF Nos. 33, 62, and 63) and briefing related to two separate motions to compel production filed by Plaintiff Doughty (ECF Nos. 32, 38, 43, 85, 86, and 87).

requests for production, which Plaintiffs' counsel reviewed in detail and used to pursue the litigation. *Id.* Plaintiffs' counsel also pursued discovery from more than forty-three (43) third parties including CentralSquare's technology consultants and public relations firm as well as the municipalities that used Click2Gov as well as interviewed many representatives and counsel for these municipalities as well as Class Members. *See* the Declaration of William B. Federman, attached hereto as **Exhibit 1**, ("Fed. Decl. II"), ¶¶9-10. The Parties also participated in multiple meet and confers related to discovery. *Id.*, ¶11. Class Counsel retained and utilized multiple expert witnesses in both discovery and to support the two Motions for Class Certification (ECF Nos. 53 and 60) filed in this action. *Id.*, ¶12.

Before, during and after Plaintiffs' and CentralSquare's settlement negotiations and first mediation, Plaintiffs, in conjunction with information reviewed by their experts, sought and obtained both formal and informal discovery from CentralSquare and Norman, including: the number of individuals whose Payment Data was compromised during the Incident; the types of Payment Data exposed; the mechanics of the Incident including identification of the affected systems; internal communications about how the Incident was uncovered and the remedial actions taken by CentralSquare after the Incident was uncovered; the reaction and remedial measures taken by various municipalities; CentralSquare's financial condition; the support being given to Click2Gov; and the terms of any potentially applicable insurance coverage. (Fed. Decl. ¶35).

The information developed allowed Class Counsel to conduct the settlement negotiations with a complete understanding of the strengths and weaknesses of Plaintiffs' claims, the size and scope of the potential class, and the financial resources available to

facilitate a settlement. Equipped with that knowledge and his significant experience litigating and resolving similar actions, Class Counsel negotiated what he believes to be a fair, adequate, and reasonable settlement worthy of presentation to the Court and the putative Class for final approval. Fed. Decl. II, ¶5.

### ii.      Negotiation of the proposed Settlement Agreement

This Settlement resulted from good faith, arm's-length settlement negotiations supervised by Mr. Rodney Max, a highly experienced mediator with experience mediating data breach cases, beginning with a Zoom-facilitated mediation session on December 5, 2020. Fed. Decl., ¶19. After nearly a year of additional litigation and more discovery battles, the Parties attended a second, full-day, in-person mediation before Mr. Max on October 13, 2021 that extended late into the evening. Fed. Decl. II, ¶13. At the conclusion of the mediation, and over the following months with Mr. Max's continued involvement, the Parties negotiated and executed the SA and pertinent settlement attachments, including proposed notices, a proposed claim form, and proposed orders. The Parties also sought cost proposals from several potential settlement administrators. (*See* Motion for Preliminary Approval, ECF No. 109, p. 10).

### iii.      Pertinent terms of the Settlement

#### 1.      The Settlement Class Definition

The Court provisionally certified the following Settlement Class[7] for purposes of settlement only:

All individuals in the United States whose Payment Card was used to pay

---

[7] CentralSquare does not oppose certification for settlement purposes only.

utility bills and/or other payments through the CentralSquare Click2Gov payment portal between January 1, 2017 and December 31, 2019. Excluded from the Settlement Class are the judge(s) presiding over this matter, any members of the judicial staff, the officers and directors of CentralSquare, and persons who timely and validly request exclusion from the Settlement Class.

(ECF No. 115).

### 2.      Direct Monetary Relief to Settlement Class Members

Under the Settlement, CentralSquare will pay $1.9 million initially, and up to a maximum of $2.9 million, into a settlement fund. (SA, ¶34). The settlement fund will be used to: 1) pay court-approved attorneys' fees, expenses, and plaintiff service awards; 2) pay costs of administration and notice; and 3) make payments to Settlement Class Members who submit approved documented unreimbursed loss or attested time claims, as defined in the Settlement Agreement. (SA, ¶45). Eligible Settlement Class Members may make both documented unreimbursed loss claims documented loss claims and attested time claims. *Id.*

For documented unreimbursed loss claims, Settlement Class Members are eligible to receive reimbursement of all losses and out-of-pocket expenses incurred during the Settlement Class Period (January 1, 2017 to December 31, 2019) if they: a) used their Payment Card during the Settlement Class Period and experienced an unreimbursed monetary loss more likely than not caused by the Incident; and (b) provide documentation of their unreimbursed monetary losses including fraudulent charges, bank fees, replacement card fees, late fees, credit freeze fees as well as any other fees such as parking or transportation incurred as a result of the Incident, and the efforts made to avoid or seek reimbursement for the loss. (SA, ¶¶ 45(a) and (b)).  Settlement Class Members with such

6

documented unreimbursed losses are also eligible to receive up to $60 at a rate of $20 per hour for time attested to in addressing any fraudulent transactions or monitoring their accounts as a result of the Incident. (SA, ¶¶ 45(c)).

In addition to monetary consideration, CentralSquare has committed to numerous measures to further enhance its data security practices including, but not limited to: (a) requiring that all Click2Gov payment programs comply with PCI DSS Standards; (b) appointment of a qualified Chief Information Security Officer responsible for coordinating CentralSquare's protection of citizen users' personal information; (c) the implementation of an anonymous hotline for data security; (d) the hiring of a third party vendor to annually audit CentralSquare's data security systems; and (e) the encryption of all payment card data at the time data is input. (SA, ¶50).

### 3. Administration Costs, Service Awards, Attorneys' Fees, and Expenses of Litigation

The Settlement Fund will also be used to pay the following:

1) The reasonable costs of notice and settlement administration (SA ¶51);

2) Service awards of up to $2,500.00 to Plaintiff Doughty and $1,500.00 to Plaintiff Fischer, subject to Court approval (SA ¶¶84-85); and

3) Attorneys' fees and expenses in an amount not to exceed $900,000.00 that CentralSquare has agreed not to oppose. (SA, ¶86).

### iv. The Court granted Preliminary Approval and the Parties implemented the Notice program

Plaintiffs filed an unopposed motion for preliminary approval of the settlement on March 28, 2022. (ECF No. 109). The Court granted preliminary approval and authorization

of notice on April 20, 2022. (ECF No. 115).

Since that time, the Parties have worked with the Court-approved settlement administrator, KCC, to implement the notice program, including issuance of mail and electronic notices and the establishment of a settlement website and toll-free hotline. Fed. Decl. II, ¶14. *See also*, Declaration of Janeth Antonio, ¶¶6-13, filed concurrently herewith as **Exhibit 1** to Plaintiffs' motion for final approval. Although the deadline to file claims is not until September 8, 2022, to date, the response from the Settlement Class has been uniformly positive: 812 Claim Forms have been submitted, zero Class Members have exercised their ability to object to the Settlement and only one Class Member has sought to exclude themselves from the Settlement. Declaration of Janeth Antonio, ¶¶14-16. This constitutes a claims rate of .43%, though Class Members still have nearly another two months to submit claims. Fed. Decl. II, ¶8.

## III.   ARGUMENT

### i.   The percentage-of-the-fund approach is permitted by Oklahoma law and preferred by the Tenth Circuit.

In diversity cases within the Tenth Circuit, state substantive law governs the permissible methods of calculation of reasonable attorneys' fees. *Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*, 888 F.3d 455, 4638. (10th Cir. 2017) ("*Enervest*"). Under Oklahoma law, a reasonable attorney fee in class actions may be determined using either the percentage-of-the-fund method or the lodestar method. *Strack v. Cont'l Res., Inc.*, 507 P.3d 609, 615 (Okla. 2021).[8] Whichever method is used in the

---

[8] The *Enervest* court predicted that Oklahoma law would require the use of the lodestar

first instance, it should also be cross-referenced using the other method, to ensure a reasonable fee:

> We conclude that both the lodestar method and the percentage method are valuable to determine attorney's fees under Oklahoma's class action statute. A court's goal in deciding attorney fee awards is to award a reasonable fee, and a court should compare the results of both methods to ensure it is awarding a reasonable fee in a common fund class action.

*Id.* at 617.

The percentage-of-the-fund approach is preferred by the Tenth Circuit when state law so permits. *See Gottlieb v. Barry*, 43 F.3d 474, 482–83 (10th Cir. 1994); *Anderson v. Merit Energy Co.*, 2009 WL 3378526 at *2 (D. Colo. Oct. 20, 2009). This approach results in "proportionately spreading payment of attorney fees among   the   class members." *Lucken Family Ltd. Partnership, LLP v. Ultra Res., Inc*., 2010 WL 5387559, at *2–3 (D. Colo. Dec. 22, 2010).

Oklahoma's class action statute also includes a list of factors to be considered in arriving at a fair and reasonable fee for class counsel, which are as follows:

1. time and labor required,
2. the novelty and difficulty of the questions presented by the litigation,
3. the skill required to perform the legal service properly,
4. the preclusion of other employment by the attorney due to acceptance of the case,
5. the customary fee,
6. whether the fee is fixed or contingent,
7. time limitations imposed by the client or the circumstances,

---

method in common fund cases, *Enervest* at 463-64, but the Supreme Court of Oklahoma in *Strack* subsequently held otherwise. As an intervening decision of Oklahoma's highest court resolving the relevant state law issues, *Strack* is binding on this Court and other federal courts applying Oklahoma law. *Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*, 2022 WL 566790 at *2 (W.D. Okla. Feb. 24, 2022) (citing *Kokins v. Teleflex, Inc.*, 621 F.3d 1290, 1295 (10th Cir. 2010)).

8.    the amount in controversy and the results obtained,
9.    the experience, reputation and ability of the attorney,
10.    whether or not the case is an undesirable case,
11.    the nature and length of the professional relationship with the client,
12.    awards in similar causes, and
13.    the risk of recovery in the litigation.

12 O.S. § 2023(G)(4)(e). Not all the factors apply in every case, and some deserve more weight than others, depending on the facts at issue. *Chieftain Royalty Co. v. XTO Energy Inc.,* No. CIV-11-29-KEW, 2018 WL 2296588, at *3 (E.D. Okla. Mar. 27, 2018).

As explained below, Class Counsel's request for payment of $900,000.00 for fees and reimbursement of expenses,[9] or approximately 28% of the Settlement Fund for attorneys' fees, is reasonable when analyzed under these factors, a lodestar cross-check, and similar cases. The Parties did not negotiate attorneys' fees and expenses until all substantive terms of the Settlement were agreed upon. Fed. Decl. II, ¶¶6-7. Additionally, the amount of fees and expenses sought by Class Counsel was presented as a mediator's proposal by the mediator, Mr. Rodney Max, who is an experienced class action mediator, after the Parties reached a stalemate in negotiations. *Id.*, ¶7.

## ii.    The requested fee is within the customary percentage range and reasonable under Oklahoma's statutory factors.

Class Counsel's request for a fee and reimbursement of expenses award of $900,000.00, equivalent to approximately 28% of the Settlement Fund for attorneys' fees, is within the standard range as recognized by the Oklahoma Supreme Court. "[T]he

---

[9] Class Counsel's (including local counsel's expenses from the *Fischer* action in the Southern District of Florida) expenses total $87,903.41. Fed. Decl. II, ¶26. Thus, Class Counsel's request for fees and reimbursement of expenses represents a positive multiplier of 1.19 ($756,281.91 in fees and expenses). *Id.*, ¶28.

attorney's fees awarded in complex class actions are normally 20% to 30% of the recovered fund, with deviations from that range when the fund is extraordinarily large or small relative to the hours of work expended by the attorneys." *Strack*, 507 P.3d at 617.

Federal courts within the Tenth Circuit also routinely approve fee requests in that range or even higher. *See CompSource Okla. v. BNY Mellon, N.A.*, 2012 WL 6864701 (E.D. Okla. Oct. 25, 2012) ("25% is on the low end of the range of acceptable fee awards in common fund cases, which ranges between 22% and 37%, and more in some cases"); *Lucken*, 2010 WL 5387559, at *6 ("The customary fee awarded to class counsel in a common fund settlement is approximately one third of the total economic benefit bestowed on the class." *Vaszlavik v. Storage Tech. Corp.,* No. 95–B–2525, 2000 WL 1268824 (D. Colo. Mar. 9, 2000) ("A 30% common fund fee award is in the middle of the ordinary 20%–50% range and is presumptively reasonable."); *Cimarron Pipeline Construction, Inc. v. National Council on Compensation Insurance*, 1993 WL 355466, at *2 (W.D. Okla. June 8, 1993) ("Fees in the range of 30–40% of any amount recovered are common in complex and other cases taken on a contingent fee basis.").

An analysis of the fee request under Oklahoma's statutory factors confirms the reasonableness of the request.

### 1.    The Amount Involved and the Results Obtained – § 2023(G)(4)(e)(8).

In "contingent fee representations, the most important factor is the result obtained." *Fitzgerald Farms, L.L.C. v. Chesapeake Operating, L.L.C.*, No. CJ-2010-38, 2015 WL 5794008, at *2 (Okla. Dist. Ct. Beaver Cty. July 2, 2015); *Tibbetts v. Sight 'n Sound*

*Appliance Ctrs., Inc*., 77 P.3d 1042, 1046, 1049 (Okla. 2003). Here, the substantial recovery obtained, up to $2,900,000.00, plus important injunctive relief, and the fact that the recovery will be distributed within three years of beginning litigation if approved, weigh in favor of the requested fee. Class Counsel estimates that even after subtracting the requested fees, expenses, service awards, and administration costs, well over $1 million of the Settlement Fund will be available to be directly distributed to Class Members who submit valid claims. Fed. Decl. II, ¶29. Thus, the ratio of direct payments to the class compared to the fee request is more than 2:1, which compares very favorably to *Hess v. Volkswagen of Am*., 398 P.3d 27, 32–34 (Okla. Ct. Civ. App. 2017), in which an Oklahoma appellate court affirmed a fee award of $983,616.75, despite an ultimate distribution to the class of only $45,780.[10]

### 2. Time and Labor Required – § 2023(G)(4)(e)(1).

Here, Class Counsel devoted substantial time, labor, and resources to achieve the Settlement. Since the start of this case in 2020, Class Counsel has documented 1,236.55 hours spent litigating this case, at a value of $660,772.50 when multiplied by counsel's customary rates. Fed. Decl. II, ¶¶16-18. This time does not include the time spent finalizing the motion for final approval and attorneys' fees, preparing for the final fairness hearing, or responding to Class Member inquiries, wherein Class Counsel could accrue an additional $10,000.00 in fees. Fed. Decl. II, ¶¶16-18, 21. In addition, Gesten George McDonald, PLLC, Class

---

[10] *See also*, *Poling, et al. v. Artech, LLC*, Case No. 3:20-cv-07630-LB (N.D. Cal.) in which Class Counsel's attorneys' fee request of $350,000.00, which constituted a positive multiplier of 1.59 (significantly higher than the multiplier here) was granted.

Counsel's local counsel in the *Fischer v. CentralSquare* action in the Southern District of Florida, incurred $469.00 in expenses and $7,606.00 in fees. Fed. Decl. II, ¶16.

Although Class Counsel consistently sought to keep costs and fees to a minimum, the Action required a significant amount of work and time against two national law firms with deep data breach litigation experience and a very highly regarded local law firm. These efforts included: fully investigating the facts and legal claims; preparing the complaints; requesting, obtaining, and reviewing numerous documents from CentralSquare regarding the Incident and how it affected Class Members, CentralSquare's remediation efforts, insurance coverage, and financial condition; successfully defeating CentralSquare's motion to dismiss in the Southern District of Florida action; conducting multiple depositions as well as deposing several of Defendant's representatives; interviewing third-party witnesses; drafting and serving numerous subpoenas to third parties; drafting a comprehensive mediation statement assessing the legal and factual strengths and weaknesses of the case; participating in the mediations and a multi-week negotiation process to develop the proposed settlement agreement; developing the notice program and distribution plans, including soliciting bids from settlement administrators; obtaining preliminary approval; and working with KCC to implement the notice plan. Fed. Decl. II, ¶20.

For these reasons, and as shown further below in the discussion regarding the lodestar cross-check, the time and labor required strongly support a finding that the requested fee is reasonable.

### 3.      Novelty and Difficulty of the Questions Presented –
### § 2023(G)(4)(e)(2).

"One of the basic considerations in establishing the reasonable value of legal services is the type, extent, and difficulty of the services rendered." *Robert L. Wheeler, Inc. v. Scott*, 777 P.2d 394, 396 (Okla. 1989). Class actions are notoriously complex and vigorously contested. *See Chieftain Royalty Co. v. Marathon Oil Co*., No. CIV-17-334-SPS, 2019 WL 7758915, at \*5 (E.D. Okla. Mar. 8, 2019). As are data breach cases. *In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-MD-2807, 2019 WL 3773737, at \*6–7 (N.D. Ohio Aug. 12, 2019) ("The realm of data breach litigation is complex and largely undeveloped. It would present the parties and the Court with novel questions of law."). In addition to the merits regarding liability, this case presented a potentially difficult fight over class certification had the case not settled, and certification has been denied in several data breach cases. *See, e.g., Dolmage v. Combined Ins. Co. of Am.*, No. 14 C3809, 2017 WL 1754772, at \*10 (N.D. Ill. May 3, 2017) (class certification denied); *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21, 33 (D. Me. 2013) (same); *In re TJX Cos. Retail Sec. Breach Litig.*, 246 F.R.D. 389, 397-98 (D. Mass. 2007) (same).

Here, this class action data breach action involved numerous complex questions of law and fact, which support the reasonableness of the requested fee.

### 4.      The Skill Required to Litigate the Case and the Experience,
### Reputation and Ability of Those Who Did –
### § 2023(G)(4)(e)(3) & (9).

This Action called for considerable skill and experience, requiring investigation and

14

mastery of complex factual circumstances, the ability to develop creative legal theories, and the skill to respond to a host of legal defenses. As explained in the preceding section, data breach litigation is a cutting-edge area of the law that presents numerous developing issues, evolving precedents, and unpredictable outcomes. With over forty years of experience, Class Counsel has litigated complex class action cases in courts across the country and obtained leadership positions in numerous large, national class action cases including MDL proceedings. *See* Fed. Decl. II, ¶15. A sampling of cases in which Federman & Sherwood has served in leadership roles is included in the Fed. Decl. II. Federman & Sherwood's firm resume is attached to **Exhibit A** to the Fed. Decl. II filed herein. Further, Class Counsel has received many favorable results in data breach and privacy cases throughout the nation, including one of the few certifications of a contested data breach action. *Id.* Without the experience and skill displayed by all counsel, the Settlement would not have been obtained.

### 5.   Limitations on Counsel's Time and Opportunity – § 2023(G)(4)(e)(4) & (7).

This litigation began in mid-2020 and has required the devotion of substantial time from Class Counsel. A case of this size and complexity requires the commitment of a large percentage of the time and resources of Federman & Sherwood, Class Counsel's firm. Thus, Federman & Sherwood was necessarily precluded to some degree from working on other cases and pursuing available opportunities due to his dedication of time and effort to prosecuting this Action. Fed. Decl. II, ¶30. Accordingly, these factors support the fee request.

6.      **Customary Fee and Awards in Similar Cases –
        § 2023(G)(4)(e)(5) & (12).**

Federman & Sherwood's billing rates have been evaluated and found to be reasonable by numerous courts in and around the country, including this District.  *See, e.g., In re Samsung Top-Load Washing Mach. Mktg., Sales Pracs. & Prod. Liab. Litig.,* No. 17-ml-2792-D (W.D. Okla., Jun. 11, 2020) (Dkt. No. 256), slip op. at 15 (finding that Federman & Sherwood's billing rates "are reasonable" for the "geographic area[] in comparable cases, and Class Counsel's affidavits support the request's reasonableness") *aff'd*, 2021 WL 1825685, at *12 (10th Cir. May 7, 2021); *Nakkhumpun v. Taylor*, No. 12-CV-01038-CMA-CBS, 2016 WL 11724397, at *5 (D. Colo. June 13, 2016) (finding Federman & Sherwood's billings reasonable and approving fee request); *Stanaford v. Genovese*, No. 9:13-CV-80923 (KLR), 2015 WL 4930209, at *1 (S.D. Fla. Aug. 17, 2015) (same); *Friedman v. Quest Energy Partners LP*, No. CIV-08-1025-M, 2010 WL 4925133, at *6 (W.D. Okla. Nov. 29, 2010) (same); *see also* Fed. Decl. II, ¶17.

Further, courts routinely award similar fee percentages as the one sought here in similar cases. *See Cimarron Pipeline Const.*, 1993 WL 355466, at *2 ("Fees in the range of 30–40% of any amount recovered are common in complex and other cases taken on a contingent fee basis."); 4 Robert Newberg, Newberg on Class Actions, § 14:6 at 551 (4th ed. 2002) ("Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery")); *Vaszlavik*, 2000 WL 1268824, at *10 (noting that "requested fee of 30% of the settlement is well within the ordinary range of common fund awards," and that "[a]

16

30% common fund award is in the middle of the ordinary 20%–50% range and is presumptively reasonable"). Therefore, these factors support Class Counsel's request.

### 7.    Whether the Fee is Fixed or Contingent, and Risk of Recovery – § 2023(G)(4)(e)(6) & (13).

The receipt of a fee in this litigation was entirely contingent on the success of the litigation. Fed. Decl. II, ¶31. As a result, there was a significant risk that Class Counsel would recover no fee if Plaintiffs would have lost on the merits, either through dispositive motion practice or at trial. In addition to the time spent on this case, Class Counsel advanced costs, which he would not be entitled to have reimbursed without a successful outcome in this litigation. *Id.*, ¶32. This is likely the only way this case could have been undertaken, as it is highly unlikely any Class Member would have paid Class Counsel on an hourly basis to the extent necessary to litigate this case properly and achieve a recovery comparable to the outstanding result Class Counsel obtained here.

As mentioned in their motion for final approval filed contemporaneously herewith, Plaintiff Doughty and her counsel were also at a huge risk following an offer of judgment tendered by Defendant. Indeed, the Court entered an order regarding Defendant's offer of judgment made pursuant to FRCP 68 and found that Defendant's offer was properly made, thereby denying Plaintiff Doughty's motion to strike the offer of judgment. *See* ECF No. 79. This Order exposed Plaintiff Doughty and her counsel to the risk of continuing litigation that grew exponentially to potentially over $1 million. Pursuant to FRCP 68, even if Plaintiff Doughty was successful to obtain judgment, if it was for less than Defendant's original offer of judgment, she would have had to pay the costs incurred after the offer of

17

judgment was made. Thus, Plaintiff Doughty and Class Counsel were exposed to potentially a multimillion award if the final trial results did not exceed the offer of judgment and the result achieved.

These factors support the reasonableness of the requested fee. Plaintiff and Class Counsel continued to pursue the litigation despite this outsized risk and exposure.

### 8. The 'Undesirability' of the Case – § 2023(G)(4)(e)(10).

This case became very undesirable after the Court accepted CentralSquare's argument on its offer of judgment (ECF No. 79). However, even prior to that the fact that no other plaintiffs' law firms filed an action or wanted to be involved indicates that the risk factor made the case undesirable. The consumers involved in the Incident are located nationwide and information about the Incident became well known after the media began reporting on it (*supra*). Data breach litigation has increased significantly in recent years, and several notably large settlements demonstrate the general viability of these cases and their potential to be worthwhile for plaintiffs' counsel. *E.g.*, *In re Equifax Inc. Customer Data Security Breach Litig.*, 999 F.3d 1247 (11th Cir. 2021); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299 (N.D. Cal. 2018). Further, the plaintiffs and classes in these cases are generally made up of employees or consumers from the average general American population, rather than any traditionally unpopular or underrepresented group.

The class size here of approximately 300,000 is small compared to the classes of tens or hundreds of millions as in cases like *Equifax* and *Anthem*. As a result, the potential financial incentives for plaintiffs' counsel was modest. It is likely for these reasons that the

Incident did not attract the attention from the plaintiffs' bar, and the only actions filed were the two filed by Class Counsel (resulting in the instant SA). This factor therefore weighs in favor of the requested fee.

### 9. Counsel's Relationship with the Client – § 2023(G)(4)(e)(11).

The most likely purpose of this factor is to assess whether any special circumstances related to the lawyer's engagement weigh in favor or enhancing or reducing the fee request. *See Stalcup v. Schlage Lock Co.*, 505 F. Supp. 2d 704, 709 (D. Colo. 2007); *but see also Peterson v. Mortg. Sources, Corp.*, No. 08-2660-KHV, 2011 WL 3793963, at *12 (D. Kan, Aug. 25, 2011) (stating that the meaning of this factor is generally unclear). For example, a lawyer may bring a class action at the urging of a long-term client for whom the lawyer charges a lower-than-customary rate. In that circumstance, it may not be appropriate to award the lawyer fees from a class settlement based on the lawyer's customary rate, because the lawyer had already agreed with the class representative to do the work at a lower rate. This factor is neutral here because Class Counsel entered into his standard contingent fee agreements with the Class Representatives and did not agree to any special rates. Fed. Decl. II, ¶33. For the reasons described above, Class Counsel's request for an attorney fee award of approximately 28% of the Settlement Fund (after expenses are deducted) is within the standard percentage range in similar cases, consistent with Oklahoma law, and supported by the Oklahoma statutory factors.

### iii. Class Counsel's fee request is reasonable under a lodestar crosscheck.

To determine the lodestar amount, counsel's hours reasonably expended on the

litigation are multiplied by counsel's hourly rates (if reasonable). *Enervest*, 888 F.3d at 458; *Strack*, 507 P.3d at 614. In calculating the lodestar amount, the movant "bears the burden of ... documenting the appropriate hours expended and hourly rates." *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1201 (10th Cir.1986) (quoting *Hensley* v. *Eckerhart,* 461 U.S. 424, 437 (1983)).

### 1. Class Counsel's Report of Hours Expended and Lodestar Incurred.

In total, Class Counsel spent 1,236.55 hours on the litigation to date, excluding some deleted entries. Class Counsel's local counsel in the *Fischer* Southern District of Florida matter spent 12.90 hours on the Litigation. Multiplied by counsel's customary and usual rates, these hours are worth $668,378.50 in lodestar. A summary of this information, broken down by firm, is as follows:

| Firm | Attorney Rate Range | Hours | Lodestar |
|------|---------------------|-------|----------|
| Federman & Sherwood | $250-$900 | 1,236.55 | $660,772.50 |
| George Gesten McDonald, PLLC | $800 | 12.90 | $7,606.00 |
| | **Totals:** | **1,249.45** | **$668,378.50** |

More detailed summaries, including listings of Federman & Sherwood's hours and rates, are provided in Class Counsel's attached declaration. *See* Fed. Decl. II, ¶19.

Measured against the requested fee and expense reimbursement request of $900,000.00, the lodestar represents a "positive" multiplier of approximately 1.19, which is extremely modest when compared with multipliers approved in other complex cases. *See, e.g., Craft v. County of San Bernardino*, 624 F. Supp. 2d 1113, 1125 (C.D. Cal. 1995)

(upholding an award of 25% of the fund that resulted in a multiplier of approximately 5.2, citing precedent for awards "in this range or higher"); *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1051 & Appendix (9th Cir. 2002) (approving a multiplier of 3.65 and citing multipliers up to 19.6); *In re Nasdaq Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 489 (S.D.N.Y. 1998) ("'In recent years multipliers of between 3 and 4.5 have become common.'") (internal citations omitted); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 371 (S.D.N.Y. 2002) (finding that "a modest multiplier of 4.65 is fair and reasonable"). *See also*, *Poling, et al. v. Artech, LLC*, approving a multiplier of 1.59.

### 2.   Class Counsel's Recorded Hours and Rates are Reasonable.

Class Counsel utilized his firm's standard billing practices and contemporary recordkeeping to track and record their reasonable hours. Fed. Decl. II, ¶¶17, 25. Prior to submitting Class Counsel's hour summary to the Court, Class Counsel reviewed all the time entries billed to this matter and exercised billing judgment to exclude hours that, in Class Counsel's professional judgment, were excessive, duplicative, or otherwise could not be billed to a fee-paying client. *Id.*, ¶25.[11]

The hours reflected in the summary are attributable to the following broader tasks, all of which were necessary to initiate, prosecute, and resolve the litigation: fully investigating the facts and legal claims; preparing the complaints; requesting, obtaining, and reviewing numerous documents from CentralSquare regarding the Incident and how it

---

[11] In addition, Class Counsel's fees and expenses include those incurred by Class Counsel's local counsel, George Gesten McDonald, PLLC in the *Fischer v. CentralSquare* action in the Southern District of Florida. *See* Fed. Decl. II.

affected Class Members, CentralSquare's remediation efforts, insurance coverage, and financial condition; drafting a comprehensive mediation statement assessing the legal and factual strengths and weaknesses of the case; participating in the mediations and a multi-month negotiation process to develop the proposed settlement agreement; developing the notice program and distribution plans, including soliciting bids from settlement administrators; obtaining preliminary approval; conducting and defending depositions and interviewing numerous third party witnesses; engaging in extensive motion practice; and working with KCC to implement the notice plan and claims process. *See* Fed. Decl. II, ¶20.

The rates utilized by Class Counsel in calculating his and his law firm's lodestar (which is his customary rate) are also reasonable in the context of this litigation. When assessing the reasonableness of an attorney's rate, "the district court should base its hourly rate award on what the evidence shows the market commands for ... analogous litigation." *Blum v. Stenson*, 465 U.S. 886, 895 (1984); *see also Missouri v. Jenkins*, 491 U.S. 274, 286 (1989) (describing relevant comparison as the rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation") (quoting *Blum*, 465 U.S. at 896 n.11); *Malloy v. Monahan,* 73 F.3d 1012, 1018 (10th Cir. 1996) (Court is to refer to the "the prevailing market rate in the relevant community.").

Here, Class Counsel is a skilled class action attorney with prior experience in data breach matters. Fed. Decl., ¶15. His rates are reasonable whether measured against the Oklahoma market for complex class actions or the national market for complex class actions in federal court. *See, e.g.*, *In re Sandridge Energy, Inc.,* No. CIV-13-102-W, 2015 WL 11921422 (W.D. Okla. Dec. 22, 2015), *aff'd sub nom. In re SandRidge Energy, Inc.*,

875 F.3d 1297 (10th Cir. 2017) (approving rates for partners in national complex litigation firms, ranging from $850/hour to $1,150/hour); *Strack*, 507 P.3d at 617 n.10 (finding rates of $875/hour reasonable for Oklahoma class action involving oil and gas royalties); *In re Anthem, Inc. Data Breach Litig.,* No. 15-MD-02617-LHK, 2018 WL 3960068, at *16 (N.D. Cal. Aug. 17, 2018) (approving $970 billing rates for partners in data breach class action); *see also* cases cited *supra* p. 14 (data breach cases involving Class Counsel, including *In re Samsung,* No. 17-ml-2792-D (W.D. Okla., Jun. 11, 2020) (Dkt. No. 256), slip op. at 15 (finding that Federman & Sherwood's billing rates "are reasonable" for the "geographic area[] in comparable cases, and Class Counsel's affidavits support the request's reasonableness") *aff'd*, 2021 WL 1825685, at *12 (10th Cir. May 7, 2021).

In sum, the hourly rates submitted by Class Counsel are reasonable and fit well within the customary rates charged by comparable firms for similar services. As a result, the lodestar cross-check strongly supports the reasonableness of the requested fee.

### iv.    Class Counsel's expenses should be reimbursed from the Settlement Fund as part of the $900,000.00 sought because they are reasonable, were necessary, and are a small fraction of the fund amount.

"As with attorney fees, an attorney who creates or preserves a common fund for the benefit of a class is entitled to receive reimbursement of all reasonable costs incurred...in addition to the attorney fee percentage." *Cecil v. BP Am. Prod. Co.*, No. 16- CV-00410-KEW, 2018 WL 8367957, at *9 (E.D. Okla. Nov. 19, 2018) (quotation marks and citation omitted).

Class Counsel's litigation expenses (along with the *Fischer* local counsel's expenses) total amount $87,903.41. Class Counsel requests that their expenses be reimbursed from the

$900,000.00 requested above. As explained in Class Counsel's supporting declaration, these expenses were unavoidable expenses such as filing fees, courtesy copy costs, the mediator fee, and travel to various depositions that benefited the Class. Fed. Decl. II, ¶26.

The total expenses are barely 3% of the total Settlement Fund. These expenses are typical of litigation, reasonable in amount, and necessary for advancement of the action to the benefit of the settlement class. For these reasons, they should be approved.

### v. The requested service awards for the Class Representatives are reasonable.

Incentive awards are typically given where a common fund has been created for the benefit of the entire class to recognize named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation. *Enervest*, 888 F.3d at 464–66. The requested service awards of $2,500.00 to Plaintiff Doughty and $1,000.00 to Plaintiff Fischer are well within the range found reasonable by courts in similar cases. *See* Theodore Eisenberg & Geoffrey P. Miller, Incentive Awards to Class Action Plaintiffs: An Empirical Study, 53 UCLA L. Rev. 1303 (2006). The Eisenberg and Miller study found that the average incentive award was .16% of the class recovery, with a median of .02%. *Id.* at 1303. The average award per class representative was $15,992, and the median award was $4,357. *Id.* at 1348.). *See also Key v. Butch's Rat Hole & Anchor Serv., Inc.,* No. CIV 17- 1171 RB/KRS, 2022 WL 457915, at *1 (D.N.M. Feb. 15, 2022) (the incentive award of $7,500 per named plaintiff is fair, reasonable, and adequate); *Nieberding v. Barrette Outdoor Living, Inc.,* 129 F. Supp. 3d 1236, 1252 (D. Kan. 2015) (approval of $3,500 to the representative plaintiff as an incentive award); *In re Universal Serv. Fund Tel. Billing*

24

*Pracs. Litig.,* No. 02-MD-1468-JWL, 2011 WL 1808038 (D. Kan. May 12, 2011) (granting $10,000 incentive award to subclass representative); *Lucken*, 2010 WL 5387559 (D. Colo. Dec. 22, 2010*) (*approving $10,000 award).

Here, the excellent result in this Action could not have been achieved without the substantial efforts of Plaintiffs. Plaintiffs assisted Class Counsel with the prosecution of their claims and those claims of the Settlement Class by retaining counsel, agreeing to serve as representative plaintiffs and verifying the complaints, communicating with Class Counsel throughout the proceeding and when required regarding various steps during Action, and Plaintiff Doughty was deposed and responded to various discovery requests. Fed Decl. II, ¶20. They devoted time and effort to the Action, and because of their efforts, a substantial benefit was conferred to the Settlement Class.

Accordingly, and in recognition of the substantial benefit they conferred on the Settlement Class and their efforts generally, modest Service Awards of $2,500 to Plaintiff Doughty and $1,000.00 to Plaintiff Fischer are reasonable and should be approved.

## IV.   CONCLUSION

For the reasons above, Plaintiffs respectfully request that this Court grant their motion (in conjunction with final approval of the Settlement) and enter Plaintiffs' proposed order awarding $900,000 towards attorneys' fees and reimbursement of expenses and approving Service Awards of $2,500 to Plaintiff Doughty and $1,500 to Plaintiff Fischer. A proposed order has been submitted with Plaintiffs' Motion for Final Approval and was also filed as Exhibit B to Plaintiffs' preliminary approval motion (ECF No. 109-2).

Dated: July 11, 2022                                   Respectfully submitted,

*s/William B. Federman*
William B. Federman, OBA #2853
Molly E. Brantley, OBA #33126
**Federman & Sherwood**
10205 N. Pennsylvania Ave.
Oklahoma City, OK 73120
T: (405) 235-1560
F: (405) 239-2112
wbf@federmanlaw.com
meb@federmanlaw.com

*Counsel for Plaintiffs and the Putative Classes*

## CERTIFICATE OF SERVICE

I hereby certify that on July 11, 2022, a copy of the foregoing pleading was filed electronically with the Clerk of Court to be served by operation of the court's electronic filing system to all counsel of record.

/s/ *William B. Federman*

26